**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian E Finley, | No. CV-18-04674-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is whether Plaintiff Brian Finley is liable for an overpayment of $35,413.00 in Social Security Benefits that he received as the representative payee for his son, R.F. The Court has reviewed the briefs (Docs. 7, 22, 23, 26) and Administrative Record (Doc. 16, R.). The Court reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings consistent with this Order.[1]

**I.    BACKGROUND**

  **A.    Theft Conviction and Finding of Overpayment**

Plaintiff filed for Social Security disability benefits on November 1, 2005, as a result of a disability that arose in 2003. (R. at 215); (Pl. Br. at 4.) The same day,[2] Plaintiff filed an application for his son, R.F., to receive child's benefits,[3] and an application to serve as

---

[1] The issues are fully briefed and the Court concludes that oral argument would not have aided its decisional process. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f).
[2] There is no support in the record for the ALJ's factual finding that Plaintiff filed the application for child's benefits on May 20, 2009. (R. at 15.)
[3] The dependent minor child of an individual entitled to disability benefits shall be entitled to a child's insurance benefit. *See* 20 C.F.R. 404.350.

R.F.'s representative payee.[4] (R. at 215.) In November 2008, an ALJ found that Plaintiff had been disabled since April 21, 2003, and that his entitlement to monthly benefits began in November 2004. (R. at 104–09, 215.) On May 21, 2009, the Social Security Administration ("SSA") granted the application for R.F. to receive child's benefits and appointed Plaintiff as R.F.'s representative payee. (R. at 104–09, 215.)

The next day the SSA issued Plaintiff a check in the amount of $16,220.00 for R.F.'s retroactive benefits. (R. at 22, 40–42, 179, 216.) In March 2010, the SSA issued Plaintiff a second check in the amount of $10,997.00 for R.F.'s remaining retroactive benefits. (R. at 179, 217, 233.) From July 2009 through June 2010, Plaintiff received $683.00 per month for R.F.'s benefits. (R. at 179, 218–29.) In total, the SSA calculated that Plaintiff received $36,096.00 as R.F.'s representative payee. (R. at 15.)

In a letter dated June 28, 2010, after an investigation apparently instigated by R.F.'s mother (Pl. Br. at 6), the SSA notified Plaintiff that he would no longer be the representative payee for R.F. (R. at 33.)

In February 2012, Plaintiff pled guilty to Theft, a class 6 undesignated felony, for inappropriately spending $2,500.00 of R.F.'s benefits. (R. at 83–92.) At sentencing, the Superior Court ordered Plaintiff to pay $2,500.00 in restitution to the SSA. (R. at 24–27, 35–38.) Plaintiff paid the restitution amount in full, and the Superior Court designated Plaintiff's offense a misdemeanor. (R. at 89.)

After that, the SSA informed Plaintiff that he had received an overpayment of $36,096.00[5] in Social Security benefits for R.F. and that he was liable for its complete repayment. (R. at 117–18); 20 C.F.R. § 404.502(a). The SSA also informed Plaintiff that "waiver [was] no longer available because the fraud conviction precludes a finding of 'without Fault.'" (R. at 117.) The SSA further indicated that it would begin withholding

---

[4] Child's insurance benefits may be made to a representative payee where the SSA determines that the child's best interest would be served by representative payment, rather than direct payment of benefits, and where the child is under the age of eighteen. 20 C.F.R. § 404.2001.
[5] As discussed below, the ALJ correctly determined that the actual amount disbursed to Plaintiff for R.F.'s benefits was $35,413.00. (R. at 15.)

100 percent of Plaintiff's own monthly disability benefits until the overpayment was fully recovered. (R. at 117.)

### B. Requests for Waiver and Denials

In May 2012, Plaintiff filed a Request for Reconsideration and Request for Waiver of his repayment obligation, asserting that he was not at fault in causing the overpayment. (R. at 39–50.) Plaintiff argued that the full amount of loss sustained by the SSA was $2,500.00, which Plaintiff had already paid as part of his restitution in the criminal case. (R. at 39–50.) Plaintiff also objected to the SSA's determination that he had been convicted of fraud. (R. at 40). Apart from the $2,500.00, Plaintiff argued that he properly spent R.F.'s benefits on R.F. (R. at 42.)

The SSA denied Plaintiff's Request for Reconsideration, finding that there had been a "misuse overpayment." (R. at 126.) On November 15, 2012, Plaintiff submitted a supplement to his request for waiver and provided documentation of his claimed monthly expenses. (R. at 51.) Later that month Plaintiff submitted another request for waiver and a letter demonstrating that the court-ordered restitution in his criminal case had been paid. (R. at 73–79, 81–82.) On December 5, 2012, the SSA again denied Plaintiff's request for waiver, finding that because Plaintiff pled guilty to theft for misusing social security funds, he could not be found without fault. (R. at 127–29.)

### C. First Administrative Hearing

In March 2013, Plaintiff requested an administrative hearing before an ALJ. (R. at 141.) The administrative hearing occurred in September 2013. (R. at 293.) At the hearing, Plaintiff testified that he was injured in 2003 and that R.F. was born in September 2004. (R. at 308.) R.F. lived with Plaintiff and R.F.'s mother in a two-bedroom apartment until June 2007. (R. at 309.) R.F.'s mother moved out of the apartment in June 2007, and R.F. continued to live full-time with Plaintiff in the apartment until March 2008. (R. at 309–10.) Plaintiff testified that from the time R.F. was born until March 2008, Plaintiff was the sole source of financial support for R.F. (R. at 310.) In March 2008, Plaintiff became homeless and R.F. went to live with his mother. (R. at 309–13, 40.)

In May 2009, Plaintiff regained a home and paid $500 a month in extra rent so that he could have a bedroom for R.F. to stay in when R.F. came to visit, which Plaintiff claimed was three or four times a week, but sometimes more frequently. (R. at 300–01, 315–16.) Plaintiff did not keep an accounting of how he spent R.F.'s benefits. (R. at 301–02.) But he claims that the $16,220.00 check in May 2009 was primarily spent on back expenses that he had already incurred from being homeless and caring for R.F. (R. at 300, 312.) Plaintiff testified that he purchased a boat when he received approximately $40,000.00 in back payments for his own injuries. (R. at 301, 317.)

R.F.'s mother obtained representative payee status for R.F.'s child's benefits in July 2010. (R. at 319.) Thereafter, Plaintiff stopped receiving funds for R.F. (R. at 319.) Plaintiff continued to share joint custody of R.F., however, and maintained a room at his home for R.F. even though he no longer served as R.F.'s representative payee. (R. at 300, 319–20.)

At the conclusion of the administrative hearing, over Plaintiff's objection, the ALJ entered the application for child's benefits and an agency statement summarizing payments made to Plaintiff into the record. (R. at 180–81.) The ALJ issued a decision, finding that Plaintiff properly spent $18,642.00 in retroactive benefits because it was undisputed that R.F. resided with Plaintiff full-time between November 2004 and March 2008. (R. at 188.) However, because R.F. was not in Plaintiff's care between April 2008 and July 2010, the ALJ found that Plaintiff received an overpayment of $17,454.00. (R. at 188.) Relying largely on Plaintiff's Theft conviction,[6] the ALJ found that Plaintiff did not prove that he had properly used all of R.F.'s benefits on R.F. or that he was entitled to waiver of the overpayment. (R. at 190–91.)

**D.  Appeals Council Review**

On January 3, 2014, Plaintiff appealed the ALJ's decision to the Appeals Council. (R. at 194–200.) On April 23, 2015, the Appeals Council vacated the ALJ's decision and

---

[6] The ALJ also noted that there was evidence Plaintiff owed gambling receipts to a casino in the amount of $11,178.00. (R. at 191.)

- 4 -

remanded the case for further proceedings. (R. at 203.) The Appeals Council found that Plaintiff was not entitled to use R.F.'s retroactive benefits to reimburse Plaintiff for prior expenses that Plaintiff incurred to care for R.F. (R. at 204.) The Appeals Council further held that 20 C.F.R. § 404.2040 required Plaintiff to use the retroactive benefits on R.F.'s current needs. (R. at 204.) Because there was no indication in the record that Plaintiff used the money for R.F.'s current needs, the Appeals Council remanded the case for the ALJ to complete the administrative record and "decide the period for which [Plaintiff] received the overpayment in child's insurance benefits on behalf of [R.F.], the cause of overpayment, and the amount of the overpayment." (R. at 205.)

### E. Second Administrative Hearing

A second administrative hearing occurred before the ALJ in July 2016. (R. at 266.) At this hearing, Plaintiff testified that he purchased food, clothing, shelter, a bed, sheets, a dresser, and bathroom items for R.F. when he regained a home in May 2009. (R. at 274.) Plaintiff also reiterated that he used the $16,220.00 check, which Plaintiff received in May 2009, to pay debts and loans that Plaintiff had incurred to care for R.F. prior to May 2009. (R. at 273–75, 285–86.) According to Plaintiff, he used the second check of $10,997.00 to pay for furnishings, including a dining room table, and "kitchen stuff, like pots and pans," which Plaintiff maintained was all for the benefit of R.F. (R. at 285–86.) Plaintiff also testified that he pled guilty to Theft because he used some of R.F.'s funds to buy a car and he believed that pleading guilty would resolve all issues related to overpayment. (R. at 287.) Finally, Plaintiff testified that he did not recall receiving letters from the SSA requesting an accounting, that he did not keep any receipts for purchases made with R.F.'s benefits, and that most of the money went toward housing, rent, and paying off back debts. (R. at 288.)

In August 2017, the ALJ issued its second decision, finding that 20 C.F.R. §§ 404.2040(a) and (d) did not permit Plaintiff to use R.F.'s retroactive child's benefits to offset prior costs that Plaintiff incurred to provide food and shelter for R.F. (R. at 17.) The ALJ found that Plaintiff was solely permitted to use the retroactive benefits for R.F.'s

- 5 -

current needs. (R. at 17.) For the monthly benefits received from June 2009 to May 2010, the ALJ concluded that Plaintiff failed to demonstrate that the funds were used to meet R.F.'s current needs. (R. at 17.) The ALJ rejected Plaintiff's argument that the criminal restitution order capped the amount of overpayment available for recovery by the SSA. (R. at 18.) And the ALJ found that Plaintiff made intentionally false statements or representations that rendered waiver inappropriate. (R. at 19.) The ALJ concluded that Plaintiff is liable to repay $35,413.00—the entire amount he received as R.F.'s representative payee—but that the SSA must account for the $2,500.00 already tendered to the SSA by Plaintiff as part of the criminal restitution order. (R. at 19.)

### F. Appeals Council Review

Plaintiff requested review of the ALJ's second decision, but on October 9, 2018, the Appeals Council denied review, finding no basis to change the ALJ's decision. (R. at 4–8.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001). The Court may set aside the Commissioner's finding of overpayment and liability for repayment only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III. ANALYSIS

### A. There is substantial evidence of the $35,413.00 overpayment.

A representative payee must use the beneficiary's funds for the beneficiary's current maintenance, including costs incurred in obtaining food, shelter, clothing medical care, and personal comfort items. 20 C.F.R. § 404.2040(a)(1). "[M]issue of benefits by a representative payee occurs in any case in which the representative payee receives payment . . . for the use and benefit of another person and converts such payment, or any part therefor, to a use other than for the use and benefit of such other person." 42 U.S.C. § 1383(a)(2)(A)(iv). A representative payee who misuses a beneficiary's benefits is responsible for repaying the misused funds so that the SSA can return the misused benefits to the beneficiary. 20 C.F.R. § 404.2041(a).

Generally, an "overpayment" is the difference between the amount paid to the beneficiary and the amount of payment to which the beneficiary was actually entitled. 20 C.F.R. § 404.504. Where a beneficiary's benefits are paid to a representative payee, *see* 20 C.F.R. § 404.2001, any misuse of the benefits by the representative payee will be treated as an overpayment to that representative payee. 20 C.F.R. § 404.2041(f).

Here, the ALJ found that Plaintiff misused all of R.F.'s benefits that Plaintiff received as the representative payee between May 2009 and June 2010. (R. at 18.) According to the ALJ, this misuse resulted in a $35,413.00 overpayment to Plaintiff ($16,220.00 + $10,997.00 in retroactive benefits + $8,196.00 in monthly benefits from July 2009 to June 2010). (R. at 15.) Plaintiff makes numerous objections to the ALJ's analysis. The Court addresses each in turn.

#### 1. Misuse of monthly benefits received between July 2009 and June 2010

Plaintiff argues that he used R.F.'s monthly benefits to care for R.F., except for the $2,500.00 he spent on a car. (Pl. Br. at 9.) The ALJ found, however, that R.F. did not live with Plaintiff after May 2009. (R. at 17.) And because Plaintiff failed to provide "receipts, bank account summaries, or any indication as to what the benefits were actually spent on,"

the ALJ concluded that the evidence failed to show that the monthly funds were used to meet R.F.'s current needs. (R. at 17.) Substantial evidence supports the ALJ's conclusion that Plaintiff misused R.F.'s monthly benefits between July 2009 and June 2010. For example, R.F. was not living with Plaintiff when he received R.F.'s benefits (R. at 139); Plaintiff admitted that he had no accounting of how he spent R.F.'s money (R. at 301); a friend with whom Plaintiff resided between May and November 2009 said that R.F. stayed with Plaintiff only one or two times a month (R. at 22); and Plaintiff was unable to prove when he purchased R.F.'s bedroom and bathroom decorations (R. at 260–61). The Court defers to the ALJ's decision on this issue.

### 2. Misuse of retroactive child's benefits

Plaintiff argues there was no misuse of the retroactive child's benefits because he used those benefits to reimburse himself for prior childcare-related expenses. (Pl. Br. at 10.) A representative payee may use funds to pay for debts incurred by a beneficiary before the first benefit payment only if the beneficiary's current and reasonably foreseeable needs are met. 20 C.F.R. § 404.2040(d). A representative payee meets the current maintenance of a beneficiary when the funds are used for obtaining food, shelter, clothing, medical care, and personal comfort items for the beneficiary. 20 C.F.R. § 404.2040(a). Because substantial evidence supports the ALJ's conclusion that Plaintiff did not use R.F.'s monthly benefits to meet R.F.'s current needs between July 2009 and June 2010, *see supra*, the ALJ properly concluded that Plaintiff was not entitled to spend any of R.F.'s retroactive child benefits. Therefore, the Court defers to the ALJ's decision that Plaintiff misused the retroactive child's benefits.

### 3. Significance of the Theft conviction

Plaintiff asserts that the ALJ used "Plaintiff's guilty plea to a $2,500.00 theft charge . . . [to] infer that all the funds received by him for his son were misused." (R. at 2.) But the ALJ did no such thing. The ALJ concluded, after a "[t]horough review of the evidence," that Plaintiff did not use *any* of R.F.'s funds to meet R.F.'s current needs. (R. at 17.) The ALJ's conclusion was based on the absence of documentation for the purported

expenditures, not the Theft conviction. (R. at 17.) The Court consequently defers to the ALJ's decision that Plaintiff misused $35,413.00 of R.F.'s benefits, which amounted to an overpayment of $35,413.00 to Plaintiff. *See* 20 C.F.R. § 404.2041(f).

**B.  Waiver**

Plaintiff disagrees with the ALJ's finding that waiver of repayment is not available. (Pl. Br. at 2, 5–8.) Plaintiff argues waiver should be granted because [i] recovery would defeat the purpose of Title II of the Social Security Act, [ii] the ALJ improperly reviewed waiver under 20 C.F.R. § 404.502 instead of conducting a fault analysis, and [iii] the ALJ did not properly consider whether Plaintiff understood his accounting obligations as the representative payee.[7] (Pl. Br. at 2, 5–9.)

The Social Security Act authorizes the SSA to promulgate rules on and execute the collection of overpayments. 42 U.S.C. § 404(a)(1). The regulations provide that a representative payee's misuse of funds is treated as an overpayment to the representative payee, 20 C.F.R. § 404.2041(f), but the SSA may waive collection of the overpayment when (1) the individual is found to be without fault for causing the overpayment, and (2) "the recovery would defeat the purpose of Title II … or be against equity and good conscience." 20 C.F.R. § 404.506(a). The person seeking waiver of recovery bears the burden of proving that he was without fault. *Anderson v. Sullivan*, 914 F.2d 1121,1122 (9th Cir. 1990).

To determine whether an individual is without fault and eligible for waiver of recovery of overpayment, the ALJ must conduct a full fault analysis as prescribed by 20 C.F.R. § 404.507. *Harzewski v. Chater*, 977 F.Supp. 217, 223 (W.D.N.Y. 1997). In determining whether an individual is at fault for an overpayment, the ALJ must consider "all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations" and the claimant's good faith. 20

---

[7] *See also* 20 C.F.R. § 404.2035(b) (noting that a representative payee has a responsibility to keep the beneficiary's benefits separate from his or her own funds unless the representative payee is the beneficiary's spouse or natural or adoptive parent or stepparent and lives in the same household as the beneficiary).

C.F.R. § 404.507; *Califano v. Yamasaki*, 442 U.S. 682, 697 (1979).

What constitutes fault depends on whether the facts show that "the incorrect payment to the individual . . . resulted from: (a) [a]n incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) [f]ailure to furnish information which he knew or should have known to be material; or (c) [w]ith respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507. If a fault determination is made that is contrary to the plaintiff's testimony, the ALJ must also make explicit findings about the plaintiff's credibility, beyond simply relying on written submissions. *Yamasaki*, 442 U.S. at 697 (requiring "an assessment of the recipient's credibility … to distinguish a genuine hard luck story from a fabricated tale"). Finally, if an overpaid individual fails to establish that he or she is without fault, it is unnecessary for the ALJ to address whether recovery would defeat the purpose of Title II or be against equity and good conscience. *Yankun v. Barnhart*, 473 F. Supp. 2d 147, 150 (D. Mass. 2006).

The ALJ erred as a matter of law by conducting a waiver analysis under 20 C.F.R. § 404.502(c)(2), which solely addresses adjustments to overpayments. (R. at 18-19.) The ALJ did not conduct a fault analysis pursuant to 20 C.F.R. § 404.507. Therefore, this Court vacates the ALJ's decision and remands for a proper and full fault analysis under 20 C.F.R. § 404.507. On remand the ALJ must take into consideration all pertinent circumstances, including Plaintiff's "intelligence, and any physical, mental, educational, or linguistic limitations" that may have contributed to Plaintiff's ability to comprehend what was required of him as representative payee.

### C. Conflicting ALJ decisions

Plaintiff asserts that the ALJ's decision (R. at 14–19) should be reversed because it is inconsistent with the first decision (R. at 186–191.) But the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. (R. at 203.) Whether the vacated decision conflicts with the ALJ decision before this Court is irrelevant. The Court defers to the ALJ's decision (R. at 14–19) that is properly before this Court.

### D. Whether the ALJ erred in admitting evidence after the first hearing

Plaintiff challenges the ALJ's consideration of exhibits that were admitted into evidence after the September 2013 hearing. Plaintiff argues that the exhibits should not have been admitted because one or both documents contained hearsay, were unsigned, or included statements other than Plaintiff's direct verbiage. (Pl. Br. at 2–3); (R. at 181–82.) The exhibits consisted of a document titled "Application Summary for Child's Insurance Benefits—Life Claim" and a statement from Field Office Personnel regarding the breakdown of the overpayment. (R. at 186); (Def. Br. at 8.)

Plaintiff's evidentiary objections are unfounded. An ALJ may receive any evidence at an SSA hearing and is not bound by the strict rules of evidence applied in court proceedings. 20 C.F.R. § 404.950(c); *Richardson v. Perales*, 402 U.S. 389, 400 (1971). Finally, ALJ's are not required to decline written evidence submitted after a hearing. 20 C.F.R. § 416.1435.

## IV. CONCLUSION

**IT IS ORDERED denying** Plaintiff's request for oral argument (part of Doc. 22).

**IT IS FURTHER ORDERED** reversing the August 23, 2017 decision of the Administrative Law Judge (AR 14–19) and remanding for proper analysis as directed above.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 13th day of March, 2020.

Michael T. Liburdi
United States District Judge